Council, you may proceed. Thank you. Good morning, Your Honors. May it please the Court, Mary Ann Dugan, for the Plaintiff's Appellants, the Lingo family. I would like to reserve five minutes of rebuttal. You may do so, just watch the clock. Thank you very much. As you know, there are two primary issues on appeal. They are in the alternative. If we win one issue, we should be allowed remand. The Court, dismiss the case on summary judgment. One issue is whether there is a jury question regarding whether there was probable cause. And the second is whether the fruit of the poisonous tree doctrine applies to civil section 1983 cases where the civil defendants are the same parties who violated the law. As you also know, it's the law of the case, because there's been no cross appeal, that the defendants did violate the Fourth Amendment by going to Ms. Lingo's rear door through the carport. Your Honor, probable cause in this situation is a jury question. In addition to the Wall v. City of Orange, County of Orange case that we cited in the briefs, I would point you to McKenzie v. Lamb, which is a 1984 Ninth Circuit case in which this court distinguished civil cases from criminal cases on this issue and held that generally, and the court used that word, probable cause is an issue for the jury and summary judgment is appropriate only if no reasonable jury could find that the officers did not have probable cause to arrest. And so in that case, in the McKenzie case, the court reversed summary judgment. Here, we have abundant facts that should go to the jury as to whether there was probable cause. The foremost is the credibility of the officer who asserted that there was an, quote, overwhelming smell of marijuana, quote, seeping out the rear door. Counsel, now this is a civil case. We're not talking about the criminal case. Correct. And you are, I think, identifying a constitutional right which may or may not apply in a civil case. There's no question, is there, that the marijuana was found? Okay, correct, Your Honor. And do you want me to move to the fruit of the poisonous tree issue then? No, I'm just raising the question so we can focus on probable cause primarily. Okay, so there are two issues. I do believe that the case law is in support of applying the fruit of the poisonous tree to civil cases because that doctrine is a judicially created doctrine intended to discourage the violations of the Fourth Amendment, as the Supreme Court said in Janus. And the deterrent effect is fully implicated here because the parties are the same. In Janus, it did not apply. The Supreme Court said that the fruit of the poisonous tree will not apply in a tax case because the taxing authorities obviously are not the ones who violated the Fourth Amendment, so there's no deterrent effect. And similarly in Calandra, the Supreme Court held that the doctrine does not apply to a grand jury proceeding because the grand jury didn't violate the Fourth Amendment. But here, where the party who's being sued is the party who violated the should apply and therefore the fruit of the poisonous tree is fully effective. And in fact, the Janus Court left that open and said, and we've cited this in our brief at page 15, if the plaintiff on remand proves federal participation, he raises the question of whether the exclusionary rule should be applied in intra-sovereign violations. Here we have an intra-sovereign violation and it should apply. But even if it does not apply, we then have the question of whether there's a probable cause issue that should go to the jury. The officer testified that there was a, or he stated in the search warrant affidavit, that there was a quote, overwhelming smell of marijuana seeping out the back door. But they only found, when the officers came, they stated that they only smelled it as they were going up the second set of stairs. There were two sets of stairs. They found only 1.8 grams of marijuana, including the weight of the package, two floors up from the rear door, in a container, inside another container, inside the nightstand. And Ms. Blingo had explained that there was incense burning in the house. And the officers did not investigate. They did not interview the adult witness who was still in the house. They didn't interview the children. They didn't do a UA. They didn't do a blood test or a drug recognition examination. And Ms. Blingo denied the marijuana, that marijuana was burning in the house. She was arrested for endangering her children. Her children were taken away from her because of that, because she was not going to be in the home. This was a severe violation of this family's rights. This probable cause issue should go to the jury. Other cases holding that that is a jury question are Smitty v. Varney. That's a 1981 Ninth Circuit case where cert was denied. And it's Smitty with a D instead of T. Gilker v. Baker, a versus Orange County, 485 F. 3rd, 463, 2007 Ninth Circuit case. And there's a Ninth Circuit model instruction on probable cause. So clearly the Ninth Circuit contemplates that probable cause goes to the jury. The officers had a duty to investigate. And there's a jury question as to whether they properly before arresting Ms. Blingo and taking her children away. In this court's case, Mendocino Environmental Center versus Mendocino County in 1999, the court noted, and this is at footnote 16, that where there are issues of fact as to whether the officer's investigation was adequate prior to In addition, there are two criminal cases from this court's jurisprudence holding that once investigation has begun, the probable cause that's initially perceived can dissipate when more facts are gathered. That's Lopez, U.S. v. Lopez, a 2007 Ninth Circuit case, and U.S. v. Ortiz-Hernandez, a immediate arrest of a woman who is not imminently endangering her children. They open the door. They don't find any marijuana. They don't find marijuana on the first floor. They only smell it going up the second floor. And then they only find it after a thorough search, 1.8 grams of marijuana. Clearly by that point, I apologize. But didn't she say that she understands it smells like marijuana, but it's really hemp? Is that what she said? Actually, in deposition. But in the search warrant affidavit, that was not stated. And that's in the record at 53 to 56. The discussion in the search warrant affidavit at 55 is Ms. Lingo explained incense was burning. It's only later that this discussion, later after litigation, this discussion of hemp smelling marijuana is brought up. So at the time the officer arrested her, there was no probable cause. But even if there had been, at the moment they start searching the house, it's immediately apparent that the probable cause has dissipated because there's no evidence supporting this theory that there's marijuana being burned. And therefore, under U.S. v. Ortiz-Hernandez, which I cited earlier, she should have been 10 days, I believe. Well, now, I want to just visualize. In this case, as it relates to probable cause, we do not have any real factual issues. When you argue that there was no probable cause, you're just putting a label on the facts that are not in dispute. Am I right? No, that's not correct, Your Honor. As in Wall, if the jury believes that, believes Ms. Lingo's statement that she was not burning, was not, had not smoked marijuana in front of the children and that there was not police knew when they entered. And all they knew was that we now know, and they now know, they were entering illegally, right? That's correct, Your Honor, and they should have known that as well. Not in this case, but in the criminal case. It was both cases. It was the criminal court and the police perceived of the evidence that they had in front of them. And when they went in, they saw children, and they smelled what they claimed was the odor of marijuana. When they entered, they did not smell marijuana. When they entered the home... Well, only because they were aware that the mother of these told the officer when they were outside that she was burning incense, yes. And that it was specially concocted, if you will, so that it would smell like marijuana. She did not say that at the time because it was not in the search warrant affidavit, that fact. Okay, when did that come into the record, that she said it was formulated to smell like marijuana? In this case, it came in the depositions. It may have come up in the criminal case as well. But for purposes of probable cause, it's entirely irrelevant because it was not stated in the search warrant affidavit. And certainly, he would have put that in there. But for the time being, we're talking about probable cause to arrest. Correct. So he did not hear that at the time because it was certainly a So when you say there is a question of probable cause, you visualize that that issue would be presented to a jury, and they would put a label on the facts, either probable cause or not. Is that what you're saying? Yes, Your Honor. And the ultimate issue of fact for jury is credibility. And here, where the officer swore that he smelled a, quote, overwhelming smell of marijuana, and it was only 1.8 grams of marijuana upstairs in a nightstand, that's an issue of credibility for the jury. Now, in this case, in this case, not in the criminal case, but in this case, once you're in front of a court that is also a juvenile court, then a lot of these things are cast aside, and the focus is on the welfare of the children. But it never went to juvenile court. It didn't go to juvenile court. It wasn't adjudicated in juvenile court. The children were returned. But it went to the, the original case went to the circuit court. Correct. The endangering a minor was a criminal matter that went to the And that's the court with jurisdiction, with juvenile court jurisdiction. The juvenile matter wasn't adjudicated at all. Never? No. Just the initial order to take the children out of the home. But aside from the, what you claim is the illegality of the entry, given the, and given the subsequent search, there would certainly be probable cause to believe in a sufficient case to go to the jury that this householder was guilty of the charge of abusing the children by having marijuana present in their presence. I don't believe 1.8 grams inside a container, inside a container, inside a nightstand is, could constitute that crime. No, Your Honor. No. The statute doesn't make that distinction, though, does it? It says in the presence of children, but that's not in the presence, in the mom's bedroom, in a nightstand, in a container. It's not one of, I mean, that wasn't briefed, and I'd be glad to submit a supplemental brief. I'm trying to, I'm trying to just visualize what a trial would look like if, if it were, if you're correct. And there are so many undisputed issues of law. I'm wondering how many, how many, how much of the facts you find the jury would have to find one way or the other in order to decide that? Well, it's an issue of law in the criminal case, and the, the court, this court made that clear, that distinction clear in McKenzie versus Lamb. In a civil case, it's, it's not an issue of law per se. If there, if a reasonable jury could find that there was no probable cause, and they could because of the credibility issue of this officer. All right. Thank you, Your Honor. Counsel, I, you had asked to reserve some time. Our questions have, have now consumed just about all of your time, so when you come back, I'll allow you an opportunity to respond. Thank you, Your Honor. May it please the court. Thomas Caponte for the City of Salem and the defendant officers. Judge, the district court correctly decided both to refuse to apply the exclusionary rule in a 1983 action. Additionally, it correctly found that summary judgment should lie in, for the benefit of the jury. There is no material issue of fact regarding probable cause in this case, and that's because the court has said that probable cause can be found by virtue of the smell of marijuana being present in the place. That's enough information to believe that behavior regarding controlled substances has, has occurred. In this case, you had Sergeant Elmore smell what he believed to be marijuana. He was, saw that there were minor children present, and he took steps to ensure that Ms. Lingo was not participating in the Oregon false arrest would not lie. The placement of the children with a family member under the supervision of DHS was authorized by law, and the district court found that that was justified. The application of the exclusionary rule is contrary to the roots of the 1983 action at common law and the reasoning behind the exclusionary rule. As the court noted in Hector B. Watt, the common law roots of the 1983 action would not have allowed recovery for any action from incarceration resulting from an illegal search. Section 1983 actions are tailored to the particular constitutional right in question. The constitutional violation in this case was that Sergeant Elmore intruded into the plaintiff's curtilage at an inappropriate time, but the plaintiff is suing for false arrest and interference with a familial relationship. The application of the exclusionary rule does nothing to vindicate the harm that was alleged by the plaintiffs. The exclusionary rule should be applied as a last resort in those cases where it's the most effective deterrent to police misconduct. The circuit courts in Towns, Wren, and Hector, and one unreported case that I found out of the First Circuit while I was preparing for this case, Machado v. Ware Department, found at 494 Fed Appendix 102, found that the application of the exclusionary rule in a Section 1983 setting would not provide effective deterrence. In fact, in Towns, the court noted applying the exclusionary rule would have a disproportionate effect because all violations, minor and major, would result in the same sanction. Application of the exclusionary rule for a Fourth Amendment violation in a case where the plaintiff is attempting to recover for illegal arrest would offer no additional deterrence and would provide the plaintiff to profit from her illegal behavior. The outcome found by the Towns Court would be peculiar, if not perverse. The exclusionary rule is not a right personal to the plaintiff. As the court stated in Calandra, it's a judicially created remedy designed to safeguard Fourth Amendment rights generally, rather than a personal constitutional right. The courts within the Ninth Circuit have refrained from applying the exclusionary rule to these 1983 actions. In fact, there have been three cases, and we'll submit a 27J letter to the court on this. There have been three cases that the District Courts have looked at this rule and have failed to apply the exclusionary rule. Neal v. California City, Ruiz v. Flores, and Ramirez v. United States. And all those cases have cited the reason behind the exclusionary rule and the difficulty of applying the rule in a civil context. Plaintiffs are alleging false arrest. Excluding evidence leading up to the arrest leaves the fact finder with no understandable context to decide the case or the egregiousness of the violation if one is found. Additionally, the discovery process would become much more cumbersome if the exclusionary rule were applied in these cases. Would information learned during the discovery process be excluded as well as additional fruit of the poisonous tree, or would it be considered attenuated given that years have passed since the incident and plaintiffs are now represented by counsel? Would parties be prevented from discovering information based on illegally obtained evidence? In this case, the plaintiff in her deposition admitted at the time that when Officer Sgt. Elmore appeared at her home she was burning incense that smelled like marijuana. She offered the smell of incense at the scene as an explanation for the smell that Officer Elmore was smelling. She went on to discuss at her deposition how she enjoyed the smell of marijuana and how people can become connoisseurs of the various strains of marijuana and their smells. This information certainly reframes the circumstances that the officers were confronted with and would inform a jury regarding the reasonableness of their actions. The district courts and the circuit courts which have looked at the application of the exclusionary rule have done so without looking at whether the evidence is gathered by the same or different sovereigns. Plaintiffs rely on U.S. v. Janus for the proposition that defendants cannot avail themselves of the evidence in this case because they were the ones who illegally obtained the evidence. If it's the defendant's position, the Janus is applicable in a situation where the defendant is the one initiating the civil or quasi-criminal action. It's at that point that the question of an inter or intra-sovereign application of the exclusionary rule would apply. Application of the exclusionary rule in 1983 actions would overturn years of jurisprudence in this area and given the context of this case, such a seismic change in the law is unwarranted. The context of this case must be kept in mind. Sergeant Elmore went to the house not for the purposes of investigating a crime but rather to calm an ongoing neighborhood dispute regarding children and dogs, a dispute that resulted in multiple calls to the police. Sergeant Elmore visited Ms. Lingo in an effort to avoid escalation of the dispute and to prevent further use of emergency services. Additionally, Sergeant Elmore was directed to the back of the entrance of the home by the neighbor, a person who had the opportunity to view the comings and goings from the house and had personal knowledge regarding the same. Sergeant Elmore at that point is placed in a catch-22. Sergeant Elmore ignores that information and goes to some other entrance of the house. Then he opens himself up for criticism that he ignored evidence that the back of the house was the appropriate entrance. Although the district court was particularly concerned about the time of day that Sergeant Elmore made the approach, the neighbor did not limit her comments regarding the comings and goings to a particular day. And the activities in the house, persons awake, visitors present, lights on, children up and around at 10 o'clock, made the visit no more intrusive at 10 o'clock as it would have been at 5 in the evening. Examining the egregiousness of the violation is in keeping with the Ninth Circuit's approach regarding application of the exclusionary rule. This court has, at least on one occasion, been willing to expand the application of the exclusionary rule outside its traditional realm in criminal law. In Gonzalez-Rivera v. INS at 22nd F. 3rd, 1441, the court in an immigration proceeding, which normally doesn't have the exclusionary rule applied, held that the exclusionary rule may apply if it involves egregious Fourth Amendment violations. For the reasons purposely cited, there's no egregiousness here, there's no bad faith, and application of the exclusionary rule in this case is inappropriate. Counsel, I don't see the Gonzalez case listed in your brief. Maybe I've overlooked it? It was not listed in the cases that we cited, but it was listed in the subsequently decided cases, and there's discussion about whether or not, when the district courts were trying to... But was it listed in either brief? No, it was not. Well, then under our rules, counsel, you should, before you leave, give copies of the specific citation to the Gonzalez case to the deputy, so in triplicate, so that all judges will have it, if you wish us to take it into account. I will, Your Honor. Okay, thank you. Did anybody ever move to suppress any evidence in the tort case? In the... In the civil case for damages? Did the plaintiff ever move to suppress evidence? Well, they did argue at the district court below that the exclusionary rule should apply in this situation. The evidence was excluded in the criminal case below, in the circuit court. But wait a minute. Following up on what Judge Goodwin just said, what evidence or the admissibility of what evidence is at stake in this case under the exclusionary rule? Well, this is a case about having done something unlawfully by entering the back part of the house instead of the front door, and that's part of the plaintiff's complaint, is it not? That she is labeling what was done repeatedly as illegal, not to exclude it, but to say, I want compensation for all of these illegal things that have been done to me. Well, they're not suing for the illegal entry into the carport. What they are suing for is they're alleging that there was false arrest and that there was interference with a familial relationship. All the product of what was illegal from ground zero. So we have a whole scenario, according to the plaintiff, of illegality, illegality, illegality, and I want compensation for it. Now, what does the exclusionary rule have to do with that? The plaintiff is eager to show how illegal it is, and you're defending yourself against how illegal it was, and where does the exclusionary rule come into all of this? And it's our position that the exclusionary rule should not apply, that the jury should have the opportunity to hear all of the evidence, to hear the justification. And just how illegal the whole thing was as it goes to the plaintiff's hopeless avoiding. But the arrest wasn't illegal. The arrest was based on probable cause. That's a good argument to make to a jury, but we're talking about evidentiary admissibility, are we not? We're talking about whether or not the court is going to allow competent evidence to be presented to the trier of facts. Okay. I'm a little bit on the margin as to whether the exclusionary rule has anything at all to do with this case, except maybe for the finding of the marijuana, the small amount of marijuana several days or a week or ten days later. No, it was found that evening as a result of the search warrant. And so, and counsel makes the argument that probable cause dissipated from after the result of the search warrant, and that's just patently incorrect. The violation of law that the defendants were charged with, or the plaintiff was charged with, was endangering the welfare of a minor. And that crime occurs when someone permits a person under 18 years of age to remain in a place where unlawful activity involving controlled substances is maintained or conducted. Well, in this case, after the search warrant, there was in fact controlled substances found. And additionally, there were packaging materials found. And there were instruments to use and smoke the marijuana found. There were over ten bongs found in this family's house. And so, PC didn't dissipate. It was strengthened by the evidence that was subsequently found in this case. For all of these reasons, Your Honors, we're asking the court to affirm the district court's decision not to allow the exclusionary rule in 1983 actions, and to find that there is no material issue of fact regarding probable cause in this case, and that a summary judgment should be allowed. Thank you. Thank you, counsel. Ms. Dugan, you have about a minute. Thank you, Your Honors. Certainly, we would have filed a motion in limine once we get to trial as far as Judge Goodwin's question. There's no opportunity until then to exclude evidence. But certainly, the fruit of the poisonous tree, which is kind of related to the exclusionary rule, came up against us because the judge applied that rule in the district court after finding that there had been an illegal entry into the home, an approach to the home. So that's how it was applied here against the denial of that rule. The court said, well, you're not going to get to argue false arrest because of the plain view doctrine. They came in, and they found this stuff, and she's arrested. But the court below also failed to look at the dissipation of evidence and the disparity between the facts that were found and the statement of the initial officer, as in the Mendocino case. And, of course, as in Janus in the footnote, the fruit of the poisonous tree doctrine would have its desired deterrent effect here because if an officer can be sued for going to the back door illegally, they're certainly going to be less likely to do that. Thank you. Thank you, Counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: Goodwin, O'scannlain, Leavy